# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOOD & WATER WATCH, INC. et al., ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 19-cv-2811 (APM) |
| TYSON FOODS, INC., ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiffs Food & Water Watch, Inc. and Organic Consumers Association originally brought this action in D.C. Superior Court for declaratory and injunctive relief under the D.C. Consumer Protection Procedures Act, claiming that Defendant Tyson Foods, Inc. misleads consumers in its marketing. *See generally*, Compl., ECF No. 1-2 [hereinafter Compl.]. Defendant removed the case to this court, asserting original jurisdiction under 28 U.S.C. §1332, which confers federal jurisdiction on "all civil actions where the amount in controversy exceeds the sum or value of $75,000, and the parties are from different states." *See* Def.'s Not. of Removal, ECF No. 1, at 2–3 (citing 28 U.S.C. § 1441(a)). Plaintiffs now move to remand the case back to Superior Court, claiming that this court lacks jurisdiction because the amount in controversy does not exceed $75,000. Plaintiffs also seek fees and costs. For the reasons set forth below, the court grants Plaintiffs' motion to remand and denies its motion for fees and costs.

I.

Plaintiffs Food & Water Watch, Inc. ("FWW") and Organic Consumers Association ("OCA") are two non-profit public-interest organizations. Compl. ¶ 1. FWW aims to "champion[]"

healthy food and clean water for all," "promot[e] the interest and rights of [ ] consumers," and "increase transparency about how factory farms operate." *Id.* ¶ 159. OCA "deals with crucial issues of truth in advertising, accurate food labeling, food safety, children's health, corporate accountability, and environmental sustainability." *Id.* ¶ 164. Plaintiffs' Complaint alleges that Defendant Tyson Foods, Inc., which produces chicken products, "makes marketing and advertising representations to convey to consumers that the Tyson brand chicken products [ ] are produced in an environmentally responsible way," *id.* ¶ 3, when in fact, according to the Complaint, "Tyson and its contractors systematically breed, hatch, raise, transport, and slaughter chickens in environmentally harmful and inhumane, disease-ridden factory-farm conditions," *id.* ¶ 5. Plaintiffs claim that statements made on Defendant's website, marketing materials, and in two promotional videos, *id.* ¶¶ 17–45, violate the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.* ("CPPA"), which "establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia," Compl. ¶ 10 (quoting D.C. Code § 28-3901(c)). Plaintiffs bring this action on behalf of themselves, their members, and the general public, *id.* ¶¶ 11, 179, and they seek declaratory and injunctive relief, including "requiring corrective advertising," *id.* at 57.

On September 18, 2019, Defendant removed the case to federal court. Def.'s Not. of Removal, ECF No. 1 [hereinafter Removal Not]. In its Notice of Removal, Defendant invoked diversity jurisdiction under 28 U.S.C. § 1332(a) as the sole basis of federal jurisdiction. *Id.* at 2–3. According to Defendant, the parties are diverse and the amount in controversy exceeds $75,000, because the cost to Defendant of complying with Plaintiffs' sought-after remedy—corrective advertising—"far exceeds $75,000." *Id.* at 3–4. In support of its motion, Defendant submitted the

declaration of Christopher Miles, the Vice President of Marketing Communications and Design at Tyson Foods, Inc. *See* Decl. of Christopher Miles, ECF No. 1-3 [hereinafter Miles Decl.], at ¶ 1. Miles states that "the requested corrective advertising campaign would require Tyson Foods to replace content on Tyson Foods' website, social media accounts, and in other non-traditional and traditional advertising channels," and estimates that implementing these changes would "exceed[] $400,000." *Id.* ¶¶ 3–4.

Plaintiffs now move to remand the case back to Superior Court, arguing that Defendant "cannot demonstrate that the amount-in-controversy requirement for diversity jurisdiction is satisfied." *See* Mem. of P. and A. in Supp. of Pls.' Mot. to Remand, and for Fees and Costs, ECF No. 7-1 [hereinafter Pls.' Mot.], at 3. In Plaintiffs' view, Defendant cannot rely on the total cost of compliance with Plaintiffs' requested injunction to meet the amount-in-controversy threshold, because doing so would violate the non-aggregation principle set forth by the Supreme Court and run counter to the vast weight of case law in this District. *Id.* at 4–5. Plaintiffs argue that, in assessing the amount-in-controversy requirement, the court instead must divide the cost of compliance among its intended beneficiaries—here, District of Columbia consumers—and thus the estimated $400,000 total cost to Defendant falls far short of the $75,000 threshold. *Id.* at 6.

II.

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also* 28 U.S.C. § 1441(a). Removal is effective when the defendant files a notice of removal in federal court with "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders" from state court. 28 U.S.C. § 1446(a). However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the

case shall be remanded." *Id*. § 1447(c). A party may challenge the federal court's subject matter jurisdiction on a motion to remand to state court. *Id*.

"[T]he party opposing a motion to remand bears the burden of establishing that subject matter jurisdiction exists in federal court." *RWN Dev. Grp., LLC v. Travelers Indem. Co.*, 540 F. Supp. 2d 83, 86 (D.D.C. 2008) (quoting *Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the West*, 366 F. Supp. 2d 33, 36 (D.D.C. 2005)). "Because federal courts are courts of limited jurisdiction, the removal statute is to be strictly construed." *Kopff v. World Research Grp., LLC*, 298 F. Supp. 2d 50, 54 (D.D.C. 2003). Accordingly, in instances "[w]here the need to remand is not self-evident, the court must resolve any ambiguities concerning the propriety of removal in favor of remand." *Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 177 (D.D.C. 2003) (citing *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999)); *Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 66 (D.D.C. 2002)).

III.

With these principles in mind, the court turns to the question at hand: Has Defendant carried its burden of establishing that the amount in controversy exceeds $75,000? When, as here, the party seeking remand contests the removing party's amount-in-controversy allegation, removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2014) (internal quotation marks omitted) (quoting 28 U.S.C. § 1446(c)(2)(B)).

The parties disagree on how to value the amount in controversy. Defendant contends that the D.C. Circuit has adopted the "either viewpoint" approach to calculating the amount in controversy in cases where, like here, injunctive relief is sought. Def.'s Opp'n to Mot. to Remand, ECF No. 13 [hereinafter Def.'s Opp'n], at 6. Under the either-viewpoint approach, this court may

4

consider either the value of the injunctive relief to plaintiff or the defendant's potential cost of complying. *See Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978). Plaintiffs, on the other hand, argue that the court may not consider the defendant's potential cost of complying because doing so would violate the non-aggregation principle. Pls.' Mot. at 4–6. That principle states that "the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder v. Harris*, 394 U.S. 332, 335 (1969); *see also Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294 (1973) (stating that "multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional-amount requirement for suit in the federal courts").

Defendant is correct that the D.C. Circuit appears to have adopted the "either-viewpoint" rule.[1] In *Tatum v. Laird*, the D.C. Circuit held that "the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." 444 F.2d 947, 951 n.6 (D.C. Cir. 1971), *rev'd on other grounds*, 408 U.S. 1 (1972) (quoting *Ronzio v. Denver & R. G. W. R. Co.*, 116 F.2d 604, 606 (10th Cir. 1940)). The *Tatum* court remanded the case to the district court because "the cost to the [defendant] of complying with [an injunction] might well exceed" the jurisdictional threshold. *Id*. at 951. Since *Tatum*, the D.C. Circuit has reiterated this holding, and the district courts of this circuit have repeatedly adopted the either-viewpoint approach. *See Smith*, 593 F.2d at 1099 ("In assessing whether a complaint satisfies that standard, a court may look either to the value of the right that plaintiff seeks to enforce or to protect or to the cost to the defendants to remedy the alleged denial.") (quotation marks and footnote

---

[1] The court writes "appears to have" because the D.C. Circuit has recognized a "possible conflict" between the non-aggregation principle and "the rule which allows the jurisdictional amount to be based on the cost to the defendant of proposed relief." *Fenster v. Schneider*, 636 F.2d 765, 767 n.1 (D.C. Cir. 1980). The Circuit has not, however, "attempt[ed] to resolve" this possible conflict. *Id.*; *see also Animal Legal Def. Fund*, 249 F. Supp. 3d 53, 60 (D.D.C. 2017) (citing *Fenster*).

5

omitted); *Breathe DC v. Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d 163, 169 (D.D.C. 2017); *Witte v. Gen. Nutrition Corp.*, 104 F. Supp. 3d 1, 4–5 (D.D.C. 2015); *Geo Specialty Chems., Inc. v. Husisian,* 951 F. Supp. 2d 32, 39–40 (D.D.C. 2013).

That the either-viewpoint approach governs does not, however, resolve the ultimate issue of how to value the amount in controversy in this case. The question remains whether the court should rely on Defendant's estimated full cost of compliance, or some lesser amount, as Plaintiffs urge, based on the non-aggregation principle. Defendant asks this court to use the entire, aggregated estimated cost of compliance, and not divide that sum among individual consumers, for three principal reasons: (1) "the benefit of any injunction would flow only to" Plaintiffs rather than the general public, Def.'s Opp'n at 7–8; (2) complying with the injunction would cost Defendant the same amount regardless of whether it were granted for just one consumer or every consumer, *id*. at 9; and (3) Plaintiffs bring an integrated claim in which they have a common and undivided interest, *id*. at 10–11. None of these arguments is persuasive.

A.

Defendant argues that Plaintiffs, rather than District of Columbia consumers generally, are the "intended beneficiaries of the claimed injunction," because "the requested injunctive relief is expressly alleged to benefit FWW and OCA, not consumers." *Id.* at 7, 8. Defendant points out that Plaintiffs are not requesting a change to the labeling of Defendant's products, and the "*only* harm articulated in the Complaint . . . is a supposed 'decrease in effectiveness' of [Plaintiffs'] communications intended to promote their own policy objectives." *Id*. at 8 (quoting Compl. ¶¶ 162, 168).

This argument is meritless. Plaintiffs plainly seek relief for more than just themselves. Plaintiffs invoke D.C. Code § 28-3905(k)(1)(C), which states that "[a] nonprofit organization may,

6

on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action," and D.C. Code § 28-3905(k)(1)(D)(i), which entitles a public interest organization to, "on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District." Compl. ¶¶ 11–12. Plaintiffs expressly state that, under these statutes, they bring their claims "in their individual and representative capacities, on their own behalves, on behalf of their members, and *on behalf of consumers and the general public.*" *Id.* ¶ 179 (emphasis added). Beyond invoking these consumer protection statutes, the Complaint alleges injury to the general public from Defendant's alleged deceptive practices. For example, the Complaint alleges that "consumers are willing to pay more for environmentally responsible poultry products and/or products from animals raised humanely," and that Defendant "is aware that these representations are material to consumers." *Id.* ¶¶ 148, 155. The Complaint further avers that Defendant "advertised and marketed [its products] with terms such as 'environmental stewardship,' 'sustainability,' 'protecting and respecting natural resources,' 'committed to compliance with environment laws,' and 'safe for the environment,'—when, in fact, [Defendant] is [the] second largest polluter in the United States and routinely emits hazardous pollutants in violation of environmental laws." *Id.* ¶ 183. And, the Complaint asserts that Defendant "advertised and marketed the [p]roducts as a humane choice, from chickens who had been given 'the highest quality of life,' free from pain, injury, disease, discomfort, fear, distress, hunger, or thirst," when, "in fact, the chicken products come from chickens who are raised, handled, transported and slaughtered through routinely abusive and inhumane conditions and practices." *Id.* ¶ 184. As relief, Plaintiffs seek "corrective advertising," *id.* at 57, a remedy that by its very nature would benefit not only their members but the general public. These allegations plausibly establish that consumers in the District of Columbia

7

in general, not just Plaintiffs and their members, have been misled by Defendant's marketing and would benefit from the requested injunction. "At most there may be ambiguity on this issue, but any such ambiguity must be resolved in favor of remand." *Animal Legal Def. Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53, 61 (D.D.C. 2017) (remanding CPPA case where the plaintiff alleged that the defendant misled consumers with a marketing campaign, and the cost of the plaintiffs' injunction, which sought corrective advertisements as well as new packaging, was properly divided pro rata among the general public).

B.

Defendant's next two arguments, which the court takes together, are equally unpersuasive. Defendant maintains that because complying with the injunction would still cost Defendant the same amount regardless of whether the injunction were granted for just one consumer or every consumer, aggregation is appropriate. Def.'s Opp'n at 8–10. It cites a number of out-of-circuit cases to support its proposition. *Id.* at 9 (citing, *e.g.*, *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006)). But courts in this jurisdiction have repeatedly rejected this argument, and with good reason. *See, e.g.*, *Organic Consumers Ass'n v. R.C. Bigelow, Inc.*, 314 F. Supp. 3d 344, 350 (D.D.C. 2018); *Inst. for Truth in Mktg. v. Total Health Network Corp.*, 321 F. Supp. 3d 76, 91 (D.D.C. 2018); *Animal Legal Def. Fund*, 249 F. Supp. 3d at 60–61. The argument "that this Court should consider [a defendant's] total compliance costs in calculating the amount in controversy . . . would circumvent the non-aggregation principle articulated" by the Supreme Court in *Snyder v. Harris* and *Zahn v. International Paper Company*. *Witte*, 104 F. Supp. 3d at 6; *see also Fahey v. Godiva Chocolatier, Inc.*, No. 19-2128 (JDB), 2020 WL 805776, at *3 (D.D.C. Feb. 18, 2020) ("Courts in this Circuit have consistently applied [the non-aggregation] principle when a plaintiff seeks injunctive relief under the CPPA on behalf of the public.");

8

*Smith v. Abbott Labs.*, No. 16-501 (RJL), 2017 WL 3670194, at *2 (D.D.C. Mar. 31, 2017) (observing that "the overwhelming weight of authority within th[is] District indicates that defendants seeking to remove [CPPA] actions cannot rely on the total cost of compliance with the plaintiff's requested injunction to establish the amount-in-controversy, as that would violate the non-aggregation principle set forth by the Supreme Court"); *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 103–05 (D.D.C. 2008) (holding that the non-aggregation principle applies when calculating the amount in controversy in representative suits).

As explained, the non-aggregation principle states that "the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder*, 394 U.S. at 335. The Court in *Snyder* explained that this doctrine is based "upon th[e] Court's interpretation of the statutory phrase 'matter in controversy,'" which has been interpreted to preclude aggregation in cases involving joinder of parties and in class actions. *Id.* at 336–37. "[A]llow[ing] aggregation of practically any claims of any parties that for any reason happen to be brought together in a single action . . . . would seriously undercut the purpose of the jurisdictional amount requirement,"—"check[ing], to some degree, the rising caseload of the federal courts, especially with regard to the federal courts' diversity of citizenship jurisdiction." *Id.* at 340. Accordingly, the only exception to the non-aggregation principle is "in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id.* at 335. That is, where "individual members of the class could not as a matter of law bring suit other than in a representative capacity." *Nat'l Org. for Women v. Mut. of Omaha Ins. Co.*, 612 F. Supp. 100, 106 (D.D.C. 1985) (citation omitted); *see also Troy Bank of Troy, Ind., v. G.A. Whitehead & Co.,* 222 U.S. 39, 41 (1911) ("[P]laintiffs have a common and undivided interest, [ ] which neither can enforce in the absence of the other.").

The "key question" before this court, then, "is not whether an injunction would cost Defendant more or less depending on the number of beneficiaries," but rather "whether Plaintiff[s] and the members of the general public have separate and distinct claims that could be brought independently against Defendant with respect to the challenged conduct." *Animal Legal Def. Fund*, 249 F. Supp. 3d at 61–62. In this representative suit, Plaintiffs and the consumers on whose behalf they bring suit have separate and distinct claims. This is not a case where none of the plaintiffs could enforce the right at issue in the absence of the others. Rather, any individual who watched Defendant's marketing videos could bring a CPPA suit on the same grounds advanced by Plaintiffs here. Nor is this a case where the plaintiffs seek disgorgement of the defendant's profits, which would be considered an integrated claim because, "[r]ather than redress an individual plaintiff's specific injury, disgorgement claims seek to hold defendants generally liable for a refund of all moneys acquired as a result of their illegal activities." *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 303 (D.D.C. 2013) (internal quotation marks and citation omitted). Plaintiffs here seek only injunctive relief, the benefit of which would flow to each individual consumer.

Defendant attempts to frame the injunction as an end to a "general practice" that ought to constitute a common and undivided interest of the class as a whole. Def.'s Opp'n at 11–12. But that argument cannot avoid the non-aggregation principle as it has been applied in this District. In *Breakman v. AOL LLC*, for instance, the plaintiffs sought under the CPPA both damages and injunctive relief related to AOL's pricing policy—in other words, a change to AOL's "general practice" of pricing. 545 F. Supp. 2d at 100. Nonetheless, the court held that the cost of the injunction must be divided pro rata among District of Columbia consumers. *Id.* at 105–06. To permit aggregation in such circumstances "would allow a plaintiff who has no claim for the

requisite compensatory damages merely to request injunctive relief, assign to that request a value measured in terms of defendant's compliance, and then litigate in the federal courts." *Id.* at 105 (quoting *Nat'l Org. for Women*, 612 F. Supp. at 108 (D.D.C. 1985)). Such an outcome would "be contrary to the longstanding directive that federal jurisdiction should be strictly interpreted." *Id.* Accordingly, consistent with the decisions of courts in this District, the court finds that for purposes of calculating the amount in controversy, the cost of the injunction to Defendant must be divided pro rata among the members of the general public of the District of Columbia.

Having so determined, Defendant's showing with respect to the amount in controversy necessarily fails. In support of removal, Defendant provided the declaration of its Vice President of Marketing Communications and Design, who avers that Defendant's cost of compliance would total approximately $400,000. Miles Decl. ¶¶ 3–4. Although this total estimated cost far exceeds the $75,000 minimum, Defendant has made no effort to demonstrate—nor could it credibly—that the cost of the injunction divided pro rata among the members of the general public of Washington, D.C. would exceed the jurisdictional threshold.

IV.

Finally, the court turns to the question of fees and costs. Plaintiffs request reimbursement of fees and costs incurred as a result of the remand litigation. Pls.' Mot. at 9–10. The Supreme Court has held that "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Here, though the decisions of the district courts in this jurisdiction overwhelmingly favored Plaintiffs' position, there is no recent, controlling authority from the D.C. Circuit as to the interplay between the "non-aggregation" and "either-

viewpoint" doctrines. Thus, the court cannot say that Defendant lacked an objectively reasonable and good-faith basis for attempting removal. The court therefore declines to award Plaintiffs any fees and costs associated with the remand litigation.

V.

For the foregoing reasons, the court finds that it lacks subject matter jurisdiction over this matter. Plaintiffs' Motion to Remand, ECF No. 7, is granted, and its motion for fees and costs is denied. The court also denies as moot Defendant's Motion for Oral Argument, ECF No. 15.

A separate Order accompanies this Memorandum Opinion.

Dated: March 5, 2020

Amit P. Mehta
United States District Judge